**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 27 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANTHONY RAY STEWART,
an individual,

      Plaintiff-Appellee,

v.

REUBEN PULIS, individually and
in his official capacity as City
Manager for the City of Kingfisher;
THE CITY OF KINGFISHER,
a municipal corporation,

      Defendants-Appellants.

No. 99-6382
(D.C. No. 99-CV-25)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **PORFILIO** , and **EBEL** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

  *     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.  <u>See</u> Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiff Anthony Stewart, a fireman and president of the firefighters' union, was demoted from the position of shift leader after he spoke at a meeting of the city commissioners.  Stewart sued Reuben Pulis, the City Manager, and the City of Kingfisher for violating his First Amendment rights. [1]  The district court rejected Pulis' claim of qualified immunity and denied summary judgment to both defendants on plaintiff's protected speech claim.  Both defendants appeal.  Plaintiff filed a motion to dismiss based on lack of appellate jurisdiction, which has been fully briefed.  We assert jurisdiction over both appeals, and affirm.

## I.

At the time of the events complained of here, the Kingfisher Fire Department had long provided both fire protection and ambulance service for the citizens of Kingfisher.  Pulis had been the City Manager for several years.  Stewart had been a fireman for several years and was president of the firefighters' union.  As City Manager, Pulis negotiated with the union for the City, and had authority to make personnel decisions.

---

[1]     Plaintiff also brought three claims under state law , but he does not appeal the grant of summary judgment to defendants on those claims.

Stewart regularly attended and videotaped meetings of the city commissioners. At a meeting held on October 21, 1997, the reporter/publisher of the local newspaper asked a question about an on-going issue of additional emergency medical technician (EMT) training for the firefighters. See Appellants' App. at 413; see also id. at 77. Pulis stated that there were disputes as to whether EMT training would be required for firefighters to keep their jobs, and whether the firefighters really wanted the training. See id. at 413. Stewart responded to Pulis' comment, saying that the firefighters did want the EMT training, but the details--whether firefighters would get more pay if they passed, whether they would be fired if they did not pass, and what would happen if some passed and some did not--had not been negotiated with the union, as required by law. See id. Pulis insisted that these points had been negotiated for five years, and Stewart answered that they had not. See id. Pulis then stated that the meeting was not the place for negotiations. See id. When Stewart replied that he had not raised the subject, Pulis stated that he brought it up to provide information to the city commissioners. See id. The next day, Pulis replaced Stewart as shift leader.

## II.

Defendants argue on appeal that: (1) plaintiff's speech is not protected because it concerned only the working conditions of the City's firefighters, which was a matter of private rather than public concern and; (2) in any event, plaintiff's interest in his expression is outweighed by the City's interest in avoiding confrontations between the union and the City at meetings of the city commissioners over firefighters' working conditions; (3) these first two issues are legal issues which entitle defendant Pulis to an interlocutory appeal; (4) defendant Pulis is entitled to qualified immunity; and (5) this court should assume pendent jurisdiction over the City's appeal, because Pulis is the final policymaker for the City with regard to the issues in this case.

## III.

If Pulis' arguments present abstract legal issues related to qualified immunity, then they are immediately appealable. See Behrens v. Pelletier, 516 U.S. 299, 313 (1996) (discussing Johnson v. Jones, 515 U.S. 304, 312-14 (1995)). Pulis' assertion that the district court erred in denying him qualified immunity from suit depends on his contention that Stewart has not sufficiently asserted a violation of his First Amendment rights. See Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). Pulis' argument that Stewart's speech did not involve a matter of public concern and is therefore not protected under the

First Amendment is a legal question. See Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996). Likewise, his contention that the City's interest in an effective workplace outweighed Stewart's interest in free expression presents a legal question. See id. We conclude that we have jurisdiction over Pulis' appeal.

Because the City may make no claim of qualified immunity, the order denying summary judgment to the City is not immediately appealable. See Owen v. City of Independence, 445 U.S. 622, 655-57 (1980). The City's appeal presents the same issues and is coterminous with our decision on Pulis' appeal, however. The court will therefore exercise pendent appellate jurisdiction over the City's appeal. See Moore v. Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995).

IV.

We review the denial of summary judgment de novo, applying the same legal standard as the district court. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving parties, defendants bear the "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995) (quotation and

citation omitted).  If defendants meet this burden, then plaintiff must "identify specific facts that show the existence of a genuine issue of material fact."        Id. We examine the factual record and draw reasonable inferences from it in the light most favorable to plaintiff, as the nonmoving party.      See Bullington , 186 F.3d at 1313.

It is well-established that a government employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."      Connick v. Myers  , 461 U.S. 138, 142 (1983). We review plaintiff's First Amendment retaliation claim under the four-step test derived from  Connick  and Pickering v. Board of Education    , 391 U.S. 563 (1968). See Gardetto v. Mason  , 100 F.3d 803, 811 (10th Cir. 1996).  As noted above, the first two questions are legal in nature and are for the court to resolve.        See id. First, we "must determine whether the employee's speech can be 'fairly characterized as constituting speech on a matter of public concern.'"        Id. (quoting Connick , 461 U.S. at 146).  If it can, we must then "balance the employee's interest, as a citizen, in commenting upon matters of public concern against 'the interest of the State, as an employer, in promoting the efficiency of the public service[s] it performs through its employees.'"      Id. (quoting  Pickering , 391 U.S. at 568).  It is for a jury to resolve any remaining factual disputes as to whether plaintiff's protected speech was a substantial or motivating factor in the adverse

employment decision, or whether the employer would have made the same employment decision in the absence of the protected speech.     See id.

The district court found that Stewart's speech touched on matters of sufficient public concern to merit constitutional protection.  We agree.  "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the  community.'"     Id. at 812 (quoting  Connick , 461 U.S. at 146).  "Speech concerning individual personnel disputes or internal policies will typically not involve public concern."       Curtis v. Oklahoma City Pub. Sch. Bd. of  Educ.    , 147 F.3d 1200, 1212 (10th Cir. 1998).  "On the other hand, speech that seeks to expose improper operations of the government or questions the integrity of government officials clearly concerns vital public interests."    Id. (quotation and citation omitted).

The parties do not dispute what Stewart said, but disagree about the proper legal characterization of his speech.  Pulis attached to his affidavit filed in the district court a January 1997 newspaper article reporting on an earlier meeting of the city commissioners.   See Appellants' App. at 77-78.  It reports an on-going discussion among the city commissioners about providing ambulance service, and notes on-going friction between Pulis and City employees and officers.      See id. It states that ambulance service was once privately owned in Kingfisher but, when the owner realized that he could not make a profit from it, he gave the ambulance

to the fire department; a one-cent sales tax passed in 1969 had successfully funded ambulance service for the City since then. See id. at 78. The article indicates that the then-current issue of additional EMT training for the firefighters to improve their skills was accompanied by a rumor or proposal that the ambulance service would be reprivatized. See id. A former city commissioner called that proposal "ludicrous," and promised that if it should happen, he would work to eliminate the sales tax and to oust the then-current city commissioners. Id.

"The content [of challenged speech] is the 'crux of the public concern inquiry.'" Withiam v. Baptist Health Care of Okla., Inc., 98 F.3d 581, 583 (10th Cir. 1996) (quoting Wren v. Spurlock, 798 F.2d 1313, 1317 n.1 (10th Cir. 1986)). "To be protected speech, the expression must 'sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government.'" Id. (quoting Wilson v. City of Littleton, 732 F.2d 765, 768 (10th Cir. 1984)). A speaker's personal interest in the content of his statements "does not transform the statements into a matter solely of internal significance." Moore, 57 F.3d at 932.

In Moore, this court distinguished between earlier cases dealing with speech by police officers. See id. In one case, a police officer's letter complaining about a police chief's interference in the police union's activities

was held to involve a matter of public concern, notwithstanding that the officer also complained about his own problems with the chief. See id. (discussing Wulf v. City of Wichita , 883 F.2d 842, 857-59 (10th Cir. 1989)). In the other, a police officer's letter complaining about mismanagement of the police department after he was denied a promotion was held not to involve a matter of public concern, because the speaker's "principal purpose was to air his personal dispute about not receiving a promotion." Id. (discussing McEvoy v. v. Shoemaker , 882 F.2d 463, 465 (10th Cir. 1989)). We hold that this case is more like Wulf than McEvoy .

It is also useful to compare the facts of this case with those presented in Gardetto v. Mason , 100 F.3d 803, and Clinger v. New Mexico Highlands Univ., Bd. of Regents , No. 99-2107, 2000 WL 799796 (10th Cir. June 22, 2000). In Gardetto , the court held that most of the speaker's statements involved matters of public concern: her support of certain candidates for the college's board of trustees, her criticism of the integrity of the college president, her efforts to obtain a no-confidence vote in the president, and her criticism of the college's reduction-in-force (RIF) plan. See Gardetto , 100 F.3d at 812-14. Her complaint about a specific person who was fired under the RIF, and her private conversation with a conference speaker--apparently to discuss strategies to raise adult and minority enrollment--were held not to be matters of public concern. See id. at 814-15.

The court distinguished the facts of Gardetto when it decided Clinger, where a professor criticized the process a college used to select a president and reorganize. See Clinger, 2000 WL 799796, at *3. The court noted that the professor did not challenge any officials' qualifications for their positions, but only their participation in an allegedly faulty procedure for choosing a president. See id. The court held that the speaker's criticism was directed at an internal, administrative procedure, and did not implicate public monies or other matters of public concern. See id. This case is more like Gardetto than Clinger.

In light of all of these cases, we conclude that Stewart's speech involved a matter of public concern. Although Stewart's comments were brief, he alleged improper and unlawful conduct by the City Manager affecting the provision of emergency fire and ambulance services to the City. The additional evidence provided by Pulis shows that Stewart's comments were directed at an issue of on-going debate in the community. Stewart was not concerned just about his job, or even just about union members' jobs, as defendants maintain.

We see no real issue with regard to the balancing part of the test. Pulis admitted that Stewart is not disruptive in general at meetings of the city commissioners, see Appellants' App. at 408, and was not disrespectful to anyone at the October 21, 1997 meeting, see id. at 409. The district court correctly determined that Pulis was not entitled to qualified immunity and that neither Pulis

nor the City was entitled to a judgment as a matter of law. Remaining factual disputes as to whether Pulis actually retaliated against Stewart based on his protected speech are for the jury.

Plaintiff's motion to dismiss the appeal is denied. The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge